## MAGNOLIA PETROLEUM CO. et al. v. RAILROAD COMMISSION OF TEXAS et al.

No. 8712.

Court of Civil Appeals of Texas. Austin.
June 8, 1938.

Rehearing Denied Oct. 26, 1938.

T. L. Foster and Martin A. Row, both of Dallas, Powell, Wirtz, Rauhut & Gideon, of Austin, Walace Hawkins and W. H. Francis, both of Dallas, and Greenwood, Moody & Robertson, of Austin, for appellants.

Wm. McCraw, Atty. Gen., and Harry S. Pollard, Asst. Atty. Gen., for appellee Railroad Commission.

Pollard & Lawrence and William S. Reeves, all of Tyler, for other appellees.

BAUGH, Justice.

This is a rule 37 case. On June 22, 1936, the Railroad Commission granted to M. E. Trapp and G. T. Blankenship a permit to drill well No. 3 as an exception to rule 37 to prevent confiscation, on their 7.85-acre tract of land in the east Texas Oil Field in Gregg County, known as the Miles tract. This suit was thereupon filed by the Magnolia, owner of a lease on the adjacent lands to the South, to set said permit aside as invalid. The Sun Oil Company, owner of a lease on adjoining lands to the north of the Miles tract intervened. The case was tried to a jury on special issues, in answer to which they found that said third well on the Miles 7.85-acre tract was necessary both to prevent waste and to prevent confiscation of property. Judgment was thereupon rendered sustaining the validity of said permit, from which the Magnolia and the Sun have appealed.

The tract in question is 389 feet wide east and west and 881 feet long north and south. No issue of subdivision is

raised and no contention made but that the lessees thereof are entitled to an equal opportunity with the owners of surrounding tracts to recover their fair share of the oil originally in place beneath it. Numerous contentions are made by appellants, asserting error of the trial court in the admission of evidence on the issue of waste, failure to give requested instructions on that issue and improper argument of counsel to the jury. Under the conclusions we have reached, however, we deem them immaterial. Even if it be conceded that it was shown as a matter of law both under the evidence and the construction placed on rule 37 in former opinions of this court, that from 'the standpoint of conservation, waste would result, rather than be prevented by the drilling of the well in question; still if there was substantial evidence before the Commission at the hearing on the application for said permit to uphold said permit on the ground recited—that is, to prevent confiscation—it is our duty under numerous decisions to sustain it. Passing therefore, for the nonce, the jury findings, if indeed a jury question were presented, we have concluded that there was substantial evidence before the Commission to sustain the permit on the ground that it was authorized to prevent confiscation. And it seems to us that the sufficiency, vel non, of the evidence on that issue presented to the Commission, was one of law for the court; and that only where the trial court could properly determine that issue against the validity of the order would a jury question be presented.

█ And if it be conceded, as urged by appellants, that such third well on the Miles tract would cause waste, but that without it confiscation of Trapp's and Blankenship's property would result, the Commission was the proper agency, and had the authority, to determine, under the provisions of rule 37, what course to pursue under such circumstances. Indeed, in the numerous cases involving exceptions to rule 37 brought before this court for review, the Commission has almost uniformly granted permits where deemed necessary to protect such property rights, regardless of the question of waste.

█ The record discloses that the underground conditions beneath this Miles tract, e. g., sand thickness, porosity, permeability, pressure, etc., were, as compared to a surrounding area eight times that of the Miles tract whether delineated by a circle with the proposed well as the center, or formed by constructing on said tract eight others of similar shape and size, were practically uniform. Also that well potentials and daily allowables for wells in said area were practically the same. If this surrounding area of eight times the Miles tract be considered as a unit it showed to be drilled to approximately the same density as the Miles tract with the two wells already located thereon, or one well to each 3.925 acres; and that the third well on the Miles tract would give it a drainage advantage. Such comparison and data, however, do not present a fair picture of the situation presented.

Immediately west of and contiguous to the Miles 7.85-acre tract was the Moseley 7.85-acre tract of the same dimensions with two wells thereon. Adjoining the north lines of the Moseley and Miles tract, and running east and west was another 7.85-acre tract with three wells thereon. Immediately east of and adjoining the last mentioned tract was another tract of similar dimensions, containing 7.91 acres with three wells on it. This latter lease was owned by the Woodley Petroleum Company. Its S W corner was located approximately 100 feet from the N E corner of the Miles tract here involved. South of and adjacent to the Woodley Petroleum Company lease was another 7.85-acre tract running east and west and adjoining for most of its width the Miles tract, with three wells thereon. Immediately south of that tract, and adjoining the Miles tract on the east was the Gulf Prod. Company 15.8-acre lease with five wells on that. In brief, it appears that there had been segregated and separately developed as units, three leases of equal size and of approximately the same dimensions adjacent to the Miles tract on the north, northeast and east, drilled to a density of $33\frac{1}{3}\%$ greater than the Miles tract; and another 7.85-acre tract only 100 feet removed from its N E corner developed to a like density.

While the leases to the south were less densely drilled and the adjoining same size tract to the west drilled to an equal density; and the geologist for appellants testified that the disparity of drainage from the Miles tract to the more densely drilled areas to the north, northeast and east, was being

compensated by drainage to the Miles tract from the south and west, without the third well on the Miles tract; we think the maps and plats showing the number and location of wells on surrounding tract which were in evidence before the Railroad Commission, together with the testimony of a geologist (shown in this record) before the Commission at the hearing on said application that the Miles tract was at a drainage disadvantage to the north, northeast and east, which was not being fully compensated by drainage to it from the south and west, was sufficient evidence to sustain said permit on the grounds recited. That being true, the other matters complained of on this appeal become, we think, immaterial, and need not be considered.

Under the conclusion reached, the jury findings become immaterial, as does the argument of counsel complained of as improper, and evidence on the issue of waste of which complaint is made. We conclude that the permit should be sustained, conceding that the additional well would cause waste.

The judgment of the trial court will, therefore, be affirmed.

Affirmed.